**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| PAUL H. HULSEY AND BELINDA ) <br> HULSEY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> HOMETEAM PEST DEFENSE LLC AND ) <br> HTPD LLC, ) <br> ) <br> Defendants. ) <br> ) | No. 2:10-cv-03265-DCN <br><br><br><br><br><br> **ORDER** |

      This matter is before the court on plaintiffs' motions for protective orders and motion to quash and/or modify a subpoena, and defendants' motion for entry upon land. For the reasons set forth below, the court denies plaintiffs' motions for protective orders as to Bert Snyder and Stan Nimmons but grants plaintiffs' motion as to Belinda Hulsey; finds as moot plaintiffs' motion to quash but grants plaintiffs' motion to modify the subpoena; and denies defendants' motion for entry upon land.

### **I. DISCUSSION**

      Plaintiffs Paul H. Hulsey and Belinda Hulsey (plaintiffs) bring this action for various contract and tort claims arising out of a contract with defendants HomeTeam Pest Defense LLC and HTPD LLC (HomeTeam) to provide pest control services. At issue are various discovery disputes. Plaintiffs seek protective orders to prevent HomeTeam from reconvening the depositions of: Bert Snyder, plaintiffs' expert in entomology; Stan Nimmons, one of plaintiffs' repair contractors; and Belinda Hulsey. Plaintiffs also seek to quash or modify a subpoena and deposition notice sent to Hal Coste, another one of

1

plaintiffs' repair contractors. Finally, HomeTeam requests an order allowing it to re-inspect plaintiffs' home.

### A.     Protective Orders

#### 1.   Bert Snyder

On March 2, 2012, HomeTeam was deposing Bert Snyder, an entomologist and testifying expert for plaintiffs, when a dispute arose over whether HomeTeam could ask Mr. Snyder his opinion of the cost of repairs for termite damage based on pictures of plaintiffs' home. Counsel for plaintiffs strenuously objected to this line of questioning and instructed Mr. Snyder not to answer.[1] Unable to resolve the dispute, counsel for both sides called the court and requested a ruling. Plaintiffs thereafter filed a motion for protective order[2] on March 20, 2012, arguing that HomeTeam's line of questioning was improper because plaintiffs did not designate Mr. Snyder to offer an opinion on damages.

---

[1] The following exchange took place:

> Q:   How much do you think it would cost to repair the termite damage that you see in photograph -- in Exhibit 6?
> MS. DURAND: I'm going to object to that question because this witness has not been identified to make an assessment of the cost of termite damage.
> . . . .
> Q:   You can give your opinion. What's your opinion, your common sense opinion of how much that would cost to fix?
> A:   I'm not going to give an idea on cost.
> . . . .
> Q:   I want to know the termite damage that we see in Exhibit 6, what's your best guess on how much it would cost to fix that?
> MS. DURAND: I'm not going to let him guess about something like that.

Snyder Dep. 148:22-150:15.

[2] For "good cause" under Federal Rule of Civil Procedure 26(c), the court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The District of South Carolina Local Civil Rules authorize parties to move for a protective order after instructing a witness not to answer a question based on three specific grounds, as discussed below. Local Rule 30.04(C) DSC.

2

Plaintiffs assert that Mr. Snyder should not be required to "guess" or "speculate" outside of his field. HomeTeam responds first, that plaintiffs waived their argument by failing to move for a protective order within the requisite seven days, second, that it should be able to ask Mr. Snyder his opinion of the cost to repair termite damages because he is experienced in this matter and raised this issue in his expert report, and, third, that plaintiffs' counsel had no legal basis to instruct Mr. Snyder not to answer.

As an initial matter, the court finds that plaintiffs did not waive their objection to the questioning of Mr. Snyder. District of South Carolina Local Rule 30.04(C) provides that counsel directing a witness not to answer a question during a deposition "shall move the Court for a protective order . . . within seven (7) days of the suspension or termination of the deposition." Further, "Failure to timely file such a motion will constitute waiver of the objection, and the deposition may be reconvened." Local Civil Rule 30.04(C) DSC. Although plaintiffs' motion was not filed for over two weeks after the deposition, plaintiffs' counsel sought a protective order on the day of Mr. Snyder's deposition when she called the court. Local Rule 30.04(I) specifically allows parties to suspend a deposition and contact the assigned judge's office telephonically. Moreover, the parties agreed to suspend the line of questioning until the court could resolve the dispute.

Next, the court agrees with HomeTeam that plaintiffs' counsel had no basis to instruct Mr. Snyder not to answer questions regarding the estimated cost of repairs. Local Rule 30.04(C) provides that counsel may only direct a witness not to answer if: (1) the answer is privileged; (2) the answer is protected by a limitation on evidence directed by the court; or (3) counsel intends to present a Rule 30(d)(1) motion to extend or enforce the seven-hour time limit for a deposition. See Local Rule 30.04(C) DSC; see also Fed.

3

R. Civ. P. 30(c)(2). Although plaintiffs' counsel argues Mr. Snyder was "badgered" by HomeTeam's repeated questions at the deposition and that the questions were outside the scope of Mr. Snyder's expert report, none of these reasons allow for instructions not to answer. Therefore, the instructions not to answer were improper.[3] See Mass Engineered Design, Inc. v. Ergotron, Inc., No. 06-272, 2008 WL 8667511, at *1 (E.D. Tex. Jan. 8, 2008); Detoy v. City & Cty. of S.F., 196 F.R.D. 362, 365-67 (N.D. Cal. 2000). In fact, because plaintiff's counsel did not object based on the three permissible grounds, she had an "affirmative duty" to inform her client that the question "must be answered." Local Rule 30.04(C) DSC.

For these reasons, the court denies plaintiffs' motion for a protective order as to Mr. Snyder. Redeposition will take place before a magistrate judge and HomeTeam's examination must be reasonably related to the issues addressed in Mr. Snyder's expert report.[4]

---

[3] Moreover, any objections to this and other lines of questioning in this litigation should have been stated *briefly* on the record and then the witness should have been allowed to answer. See Local Rule 30.04(D) DSC ("Counsel's objections shall be stated concisely . . . stating the basis of the objection and nothing more."); Fed. R. Civ. P. 30(c)(2) ("An objection must be stated concisely in a nonargumentative and nonsuggestive manner."). As the South Carolina Supreme Court has made clear:

> In order to prevent witness coaching during depositions, the [South Carolina] rule prohibits lengthy 'speaking' objections and brief suggestive interjections. . . . A witness's attorney cannot object to a question just because the attorney does not understand the question. Furthermore, it is improper for counsel to state for the record their interpretations of questions, since such interpretations are completely irrelevant and improperly suggestive to the deponent.

In re Anonymous Member of S.C. Bar, 552 S.E.2d 10, 17 (S.C. 2001) (citing Hall v. Clifton Precision, 150 F.R.D. 525 (E.D. Pa. 1993)). Here, plaintiffs' counsel's "speaking" objections during the depositions of Mr. Snyder and other witnesses were suggestive and thus improper.

[4] The court observes that further questions to elicit Mr. Snyder's opinion as to damages would seem to be a waste of time since HomeTeam acknowledged at the hearing that Mr. Snyder's "opinion" as to damages would not be admissible at trial.

### 2. Stan Nimmons

Plaintiffs also seek a protective order to limit the scope of the continuing deposition of Stan Nimmons, plaintiffs' main repair contractor. HomeTeam originally deposed Mr. Nimmons on November 1, 2011, but the parties' counsel agreed to adjourn the deposition when they learned Mr. Nimmons had not produced his entire "construction file" for the repairs to plaintiffs' home. Near the end of that deposition, counsel stated as follows:

> MR. ANDERSON: This is [counsel for HomeTeam] and pursuant to agreement of counsel we're going to leave the deposition of Mr. Nimmons open and in the event that we don't -- to possibly be resumed at some later date. And Counsel for the Hulseys is going to go ahead and ask some questions at this point.
>
> MS. DURAND: Right. And any deposition to be taken at a later date would be primarily focused on the documentation that was not provided pursuant to the subpoena with some leeway with respect to some of the photographs that we've already discussed today because we know we were running up on that seven-hour limit.

Nimmons Dep. 238:22-239:10. At the reconvened deposition on March 16, 2012, plaintiffs' counsel objected to any questioning by HomeTeam that did not relate to the new documents provided by Mr. Nimmons and to any questions HomeTeam could have asked during the initial deposition.[5]

---

[5] Plaintiffs' counsel made the following objections:

> Okay. I'm going to stop this right now. Can you tell me how this relates to the new documents and not to anything you could have asked him in the last deposition? Because if you can't we're going to stop.
> . . . .
> Okay. We're not going to have you answer any of those kinds of questions. These are questions that could have been brought up at the last deposition and were not.

Nimmons Dep. 338:18-22, 339:11-14.

5

HomeTeam argues that plaintiffs waived their objection by not filing a timely motion for protective order, whereas plaintiffs contend they are simply trying to enforce the "agreement" memorialized on the record rather than formally move for a protective order. Local Rule 30.04(C) states, "Counsel directing that a witness not answer a question . . . shall move the Court for a protective order . . . ." Because plaintiffs' counsel explicitly instructed Mr. Nimmons not to answer questions and now seeks to limit the scope of Mr. Nimmons' deposition, the court construes this as a motion for protective order. Such motions must be raised "within seven (7) days of the suspension or termination of the deposition"; however, plaintiffs did not raise this issue within the requisite time period and the argument is thus waived. HomeTeam may reconvene the deposition of Mr. Nimmons before a magistrate judge.[6]

### 3. Belinda Hulsey

Plaintiffs next seek a protective order to prevent additional questioning of Belinda Hulsey. After HomeTeam rested from its deposition questioning of Ms. Hulsey, plaintiffs' counsel and Ms. Hulsey took a private recess. Plaintiffs' counsel then briefly examined Ms. Hulsey. At the end, counsel for HomeTeam asked Ms. Hulsey what she talked about with her attorney during the break in the deposition. Plaintiffs' counsel objected on the basis of attorney/client privilege and instructed Ms. Hulsey not to answer. Plaintiffs now seek a protective order as to the communications between Ms. Hulsey and

---

[6] Even if plaintiffs had not waived their objection and the "agreement" between counsel was as stringent as asserted by plaintiffs, the court would still allow the deposition to be reconvened because Mr. Nimmons recently produced over 1000 pages of discoverable documents and HomeTeam must be given latitude in its questioning regarding those documents.

counsel, while HomeTeam seeks to strike the post-conference testimony given by Ms. Hulsey.[7]

The court first notes that plaintiffs made a timely motion for a protective order within seven days of the deposition of Ms. Hulsey. Next, the court finds it unnecessary to strike Ms. Hulsey's post-conference testimony. Counsel for HomeTeam had already completed his examination when the conference took place, and Ms. Hulsey had answered questions regarding her recollection of signing the Moore Gard contract in 1998 and HomeTeam's observation of termites in 2006 in substantially the same manner prior to the break. For these reasons, the court grants plaintiffs' motion.[8]

---

[7] Along with her objections during the deposition of Ms. Hulsey, plaintiffs' counsel made several intemperate comments, such as, "if you want to get into a fight over this, we can call a judge right now," and, "listen, I was -- I was, you know, I knew about the rules when you were still in elementary school." Belinda Hulsey Dep. 86:24-25, 87:3-5. Off the record, plaintiffs' counsel's comments were even more antagonistic, warning HomeTeam's counsel not to "start a pissing contest with me" and stating, "I've tried more cases than you will ever try in your career, son." Unfortunately, such outbursts were not isolated to the controversy that arose in Ms. Hulsey's deposition. See Nimmons Dep. 153:24-25 ("[Y]ou know, his basis of his report is a hell of a lot more than that."); Parsons Dep. 64:21 ("I'm sick of this."); Cantley Dep. 58:7-8 ("Object to the form. This is ridiculous."). These comments were clearly inappropriate under the rules. Plaintiffs' counsel noted at the hearing that she has practiced "for 22 years . . . in courtrooms across this country" and has "been involved in cases worth billions and hundreds of millions of dollars." Based on her vast experience, she should be that much more familiar with the rules, not less. Plaintiffs' counsel is reminded that violations of Local Rule 30.04 "shall be deemed to be a violation of a court order and shall subject the violator to sanctions under Fed. R. Civ. P. 37(b)(2)." Local Rule 30.04(J) DSC. Any future violations of the rules will be treated accordingly. Attorneys should not say anything in a deposition that they would not say in front of a judge or jury. The duty of zealous representation in no way justifies such incivility.

[8] The parties dispute whether Local Rules 30.04(E)-(F) apply to the conference, which state that counsel and "witnesses" shall not engage in private conferences during depositions or recesses (except to assert a privilege, make an objection, or move for a protective order), and that counsel must note such conferences on the record. The case law is silent as to whether our Local Rule applies to conferences between attorneys and *clients*. Rather than reach this issue, the court takes plaintiffs' counsel at her word that she did not coach Ms. Hulsey.

### B. Motion to Quash

Plaintiffs filed a motion to quash and/or modify a subpoena and notice of deposition sent by HomeTeam to Hal Coste, one of plaintiffs' repair contractors. HomeTeam originally took the deposition of Mr. Coste on October 31, 2011. HomeTeam now seeks to reconvene the deposition of Mr. Coste based on additional documents he produced in discovery. At the hearing, plaintiff's counsel agreed that "there should be a deposition on the new documents." For this reason, the court finds as moot plaintiff's motion to quash.

Plaintiffs alternatively seek to modify the subpoena, arguing that redeposition "should be restrained to issues relating to the new documents." HomeTeam asserts that no limitation should be placed on redeposition. The court will grant plaintiffs' motion to modify and allow HomeTeam to depose Mr. Coste regarding the new documents he has produced and to inquire into matters addressed in his first deposition if related to the new documents.[9] The redeposition will take place before a magistrate judge and must be contained to questions that are reasonably related to those new documents.

### C. Motion for Entry Upon Land

HomeTeam filed a motion to allow entry into plaintiffs' home. HomeTeam's counsel and pest control experts previously inspected the home on October 26, 2011. Because it has hired two new experts since the inspection and additional issues have arisen through discovery, HomeTeam requests that its experts be allowed to walk through the residence and observe its layout. Plaintiffs note that these experts were retained in

---

[9] As an example, in relation to the newly-produced time card entries that reflect work done for the removal of "wood rot," HomeTeam could ask Mr. Coste about photographs of work performed at plaintiffs' home that HomeTeam believes show damages resulting from a plumbing leak, even though HomeTeam already questioned Mr. Coste about those photographs in the first deposition.

December of 2011 and asked to inspect the house but that HomeTeam waited several months to request the inspection. Plaintiffs argue that it is too late in the course of this litigation for another home inspection. The court agrees with plaintiffs. Discovery was to be completed by April 13, 2012. Jury selection is set for May 15, 2012, and the case is scheduled to go to trial during the term of court beginning June 1, 2012. In addition, plaintiffs have given HomeTeam a video of the interior parts of the home that are relevant to this litigation. For these reasons, the court denies HomeTeam's motion for entry upon land.

### D.     Other Matters

The parties have requested to take depositions outside of the discovery period. Plaintiffs seek to depose Jeff Tucker, Marcia C. Sturm, Dexter Manigault, Dale Sears, and Roger Gray, and HomeTeam seeks to depose Ryan Madigan. These witnesses received proper deposition notices within the discovery period. The court will allow these depositions to take place so long as they can be taken prior to trial.

## II.   CONCLUSION

Based on the foregoing, the court **DENIES** plaintiffs' motions for protective orders as to Bert Snyder and Stan Nimmons but **GRANTS** plaintiffs' motion as to Belinda Hulsey; **FINDS AS MOOT** plaintiffs' motion to quash but **GRANTS** plaintiffs' motion to modify the subpoena; and **DENIES** defendants' motion for entry upon land. The reconvened depositions are subject to the limitations mentioned above as well as any time limitations the magistrate judge may impose.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 1, 2012**
**Charleston, South Carolina**

10